UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| TIFINEY GOINS and TAMEKA BEARD, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:08-CV-135 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Before the Court is Defendant CSX Transportation's motion for summary judgment (Court File No. 24). Plaintiffs Tifiney Goins and Tameka Beard oppose the motion. Having considered the parties' briefs, the evidence in the record, and the applicable law, the Court will **GRANT** Defendant's motion.

**I.   RELEVANT FACTS**

Plaintiffs are the only children and next of kin of Sharon Donetta Goins ("Goins"), who was killed on April 21, 2008, by a train owned and operated by Defendant. Goins was walking on Defendant's track adjacent to her apartment building when she was hit from behind by Defendant's train.

The train's engineer, J.T. Hopper, and conductor, G.J. Richardson, testified they were watching the track ahead and maintaining a proper lookout. At about the 132 mile marker, about eight-tenths of a mile away, the crew first "saw something" which turned out to be Goins. The crew immediately blew the horn, which automatically activates a bell and flashes the headlights. The event recorder graph, submitted into evidence by both sides, shows the train was traveling at 60 mph

at 15:44:31 when the horn and bell were both turned on. The horn lasted just one second and was then turned off for four seconds before being turned on again for 25 seconds, from 15:44:35 until 15:45:00. The bell stayed on from 15:44:31 until the end of the data provided to the court, at 15:45:53. The throttle stayed on until 15:44:50 before being turned to idle, at which point the speed started decreasing from 59 mph, eventually hitting 0 mph at 15:45:46. Thus, the train kept traveling at essentially full speed for 19 seconds after the crew spotted "something" on the track. The emergency breaks were applied at 15:44:54, four seconds after the throttle was turned off. No breaks had been applied until then. The train's dynamic breaks were never activated; they are used for normal slowdowns but are not good in emergency situations. Goins never attempted to exit the track. She was hit at approximately 15:45:02.

There are three tracks to the left of Defendant's track, and Norfolk Southern locomotives are often parked on those tracks. The locomotives are often left running and make considerable noise. Next to the Norfolk Southern tracks is a line of trees that separates the tracks from a Norfolk Southern rail yard. Norfolk Southern employees sometimes cross over the tracks. Richardson testified it is "not unusual" to see things in the track and the crew does not apply the breaks every time they see something. "We try to warn whatever it is in the track by blowing the horn and ringing the bell, initially." Hopper also testified is "not uncommon to see people on that track out there," usually train crews swapping. When someone is walking on the track, "you can blow the horn and they usually step off," he said. He has to blow the horn at least every other trip.

Hopper testified he saw a Norfolk Southern crew around a train on an adjacent track in the area Goins was killed. Both Hopper and Richardson thought a Norfolk Southern train was "swapping crews" until it turned out to be Goins. When the crew realized Goins was not getting off

2

the tracks, they applied the emergency breaks. They do not immediately apply the emergency breaks every time there is something ahead on the track because the emergency breaks force the train to stop and risk derailment.

II.     STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

III.    DISCUSSION

Because Goins was trespassing on Defendant's track, Defendant argues its only duty to Goins was to refrain from intentionally, willfully, or reckless injuring her. However, this rule does not apply to trespassers upon railroad tracks. *Southern R. Co. v. Elliott*, 250 F.2d 740, 742-43 (6th Cir. 1958); *Belcher v. Tennessee C. R. Co.*, 377 S.W.2d 928, 931 (Tenn. 1964) ("The fact that the plaintiff . . . may have been a trespasser does not relieve the defendant of a duty of care not to cause injury to him."); *Southern R. Co. v. Cradic*, 42 Tenn. App. 212, 222 (Tenn. Ct. App. 1956).

Plaintiff argues Defendant was negligent and contends Defendant's violation of the Statutory Precautions Act constitutes negligence per se. In relevant part, the Statutory Precautions Act commands:

> "Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

Tenn. Code Ann. § 65-12-108(3).[1] Violation of that provision by a railroad company constitutes negligence per se. Tenn. Code Ann. § 65-12-109.

Defendant contends the statute is not applicable and it satisfied the statute. The statute is inapplicable, Defendant argues, because of a judicially-created exception "for men upon and around the tracks in and about the station grounds and switching yards, whether employees *or strangers*." *Southern R. Co. v. Matthews*, 29 F.2d 52, 56-57 (6th Cir. 1928) (emphasis added). Citing Tennessee cases, the Sixth Circuit concluded applying the statute in such instances "would be so impracticable as to disrupt train operations, and hence it will not be supposed that the Legislature intended such

---

[1]The term "upon the road" as used in this statute means on the track or road bed in front of the moving train. *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 726 (6th Cir. 2005). The statute applies to this situation because Goins was on the track.

4

a result." *Id.* Thus, the statute was held inapplicable to an area "between the main and the switching track, within a city, where the tracks were passing among factories and lumber yards and within a short distance of the station"; also, "considerable numbers of men" frequently passed over the tracks there. *Id.* at 57. Earlier, the Tennessee Supreme Court held the statute does not apply "when the employees of a railway company are engaged in the distribution of detached cars, in the 'making up' of trains, and in other necessary switching in and upon its yards, depot grounds, and side tracks." *Railroad v. Pugh*, 32 S.W. 311 (Tenn. 1895); *see also Louisville & N. R. Co. v. Martin*, 87 S.W. 418, 424 (Tenn. 1905) (statute applied where train was not on switching track and occurred near but not in switching yard).

Defendant contends the statute is inapplicable to the area where Goins was killed because it is "adjacent to the Norfolk Southern Debutts Yard." There is evidence Norfolk Southern train crews often cross Defendant's track in the area. Hopper testified he sees people on the track about every other trip, and blowing the horn causes them to get off the track. Plaintiff's Amended Complaint states a Norfolk Southern locomotive was stopped next to Defendant's track, and it states railway employees and other persons are frequently on the track where Goins was killed. Thus, Defendant contends the frequency of railroad employees in the area prevents the statute's application to railroad employees or strangers.

In response, Plaintiff points out the accident did not occur in or near a station or switching yard. The Norfolk Southern yard is separated from Defendant's track by trees and other Norfolk Southern tracks. And Defendant's train was traveling through this area at 60 mph, not at a slower speed that a train would presumably travel at in or near a switching yard or station. *See Lawson v. Tennessee, A. & G. R. Co.*, 159 F.2d 65, 66 (6th Cir. 1947) (statute not applicable where train,

5

traveling at 4 or 5 mph, approached switch).

The Court concludes the Statutory Precautions Act applies. Because the accident did not occur at a station or switching yard, it does not fall within the judicially-created exception to the statute. Although the frequency of railroad employees crossing the track suggests the statute should be inapplicable, the frequency appears less than in *Matthews* and frequency is not dispositive as to this issue. *See Alabama G. S. R. Co. v. Brookshire*, 166 F.2d 278, 286 (6th Cir. 1948) (statute applied where switching had occurred a quarter mile earlier despite train's passage across "frequently traveled city street"). In addition, the high speed of Defendant's train counsels against expanding the exception to apply to this case.

Defendant argues it complied with the statute by immediately sounding the train's horn and bell and soon after applying the emergency brakes. Plaintiff essentially contends Defendant violated the statute by continuing full speed ahead and not applying the emergency breaks until eight seconds before impact. The evidence shows the train crew noticed something—not immediately recognizable as a person—on the tracks about .8 miles prior to impact. Immediately, approximately 31 seconds prior to impact, the crew sounded the horn and bell. At some point, the crew realized it was a person on the tracks and she was not responding to the horn and bell or to the train's front lights.[2] When they realized this, the crew immediately applied the emergency breaks.

Section 65-12-108(3) "positively requires three things -- the alarm whistle, the application of the brakes, and, if possible, the stopping of the train." *Southern R. Co. v. Matthews*, 29 F.2d 52,

---

[2]Because the incident happened during daylight hours, the lights would not have been as effective as at night. Plaintiffs also offer evidence the wind was blowing in the direction opposite the train. They assert the wind and noise from the nearby locomotives prevented Goins from hearing Defendant's fast-approaching train. There is no other evidence before the Court as to why Goins was on the track or why she did not leave it.

6

56 (6th Cir. 1928) (construing the identical language in an earlier version of the statute). Thus, Defendant's failure to stop the train in time is not necessarily a violation of the statute. It is undisputed the crew did comply with the statute's requirement to sound an alarm. The crew also applied the breaks and attempted to stop the train. Although they did not take these actions immediately upon noticing something on the tracks, they acted when they realized it was a person who was not a member of a train crew and was not responding to the alarm. Thus, their actions were reasonable under the circumstances.

Earlier interpretations of the statute mandate strict compliance, but these are in the context of requiring compliance regardless of whether an accident will be prevented. *Alabama G. S. R. Co. v. Brookshire*, 166 F.2d 278, 284 (6th Cir. 1948) (The statutory requirements "must be complied with, regardless of whether it appears they are necessary or will be effective to prevent an accident."); *Chattanooga Rapid Transit Co. v. Walton*, 58 S.W. 737, 738-39 (Tenn. 1900). The relevance of these strict commands is doubtful because of statutory changes in 1959: a railroad is no longer liable if its failure to comply did not proximately cause an injury. Tenn. Code Ann. § 65-12-109; *Baggett v. Louisville & N. R. Co.*, 365 S.W.2d 902, 904 (Tenn. Ct. App. 1962).

Regardless of proximate cause, the statute does not require applying the emergency breaks at the slightest hint of a potential problem. *See Majestic v. Louisville & N. R. Co.*, 147 F.2d 621, 626 (6th Cir. 1945) (statute only requires crew to do what it can reasonably due to avoid injury and with "due regard to the safety of" the train); *Patton v. Railway Co.*, 15 S.W. 919, 921 (Tenn. 1890) (Regardless of statute, railroad company must exercise care to prevent an accident if "a person is seen upon the track, and so near as to be apparently in danger. . . "). Defendant's crew did apply the emergency breaks when they realized Goins was not a railroad employee and was still walking on

7

the tracks. To have done so earlier would be to put the train at risk of derailment every time the crew sees something on the track ahead. A derailment risks death or injury to the crew and considering the freight that trains often carry could place others at risk too.

Plaintiff argues Defendant's train should have used the dynamic breaks in addition to the emergency breaks. But the two breaking systems are used separately and for different purposes. The evidence establishes the dynamic breaks are used for regular breaking and are not useful for emergency breaking. Applying the dynamic breaks would have taken time and would not have avoided the accident. The dynamic breaks would not have stopped the train in time to prevent it from hitting Goins, who never looked behind her and never stepped off the track.

Plaintiff also argues Defendant's train should have slowed down earlier, but train speed is regulated solely by federal law. *CSX Transp. v. Easterwood*, 507 U.S. 658, 674 (1993); *Emery v. Southern Ry.*, 866 S.W.2d 557, 561 (Tenn. Ct. App. 1993). "[S]peed limits [established by federal regulations] must be read as not only establishing a ceiling, but also precluding additional state regulation." *CSX Transp.*, 507 U.S. at 674. It is undisputed Defendant's train did not exceed the 60 mph speed limit established by federal regulations. *See* 49 C.F.R. § 213.9. Because the train did not exceed the speed limit, Plaintiffs' contention the train was traveling too fast is without merit. *See Emery*, 866 S.W.2d at 561 ("Since [the train] was going below the federal train speed limit, any tort claim based on excessive speed is pre-empted by the [Federal Railroad Safety Act].").

IV.     **CONCLUSION**

Because Defendant's crew complied with the Statutory Precautions Act, it is not liable for the accident that killed Sharon Goins. Accordingly, the Court will **GRANT** Defendant's motion for

8

summary judgment.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

9